UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MID-CONTINENT CASUALTY CO., a foreign
corporation,

          Plaintiff,

vs.

JDM BUILDERS, INC., a Florida corporation,
and LENNAR HOMES, LLC f/k/a LENNAR
HOMES, INC., a Florida limited liability
company, and U.S. HOME CORPORATION, a
Delaware corporation,

          Defendants.

_____ /

CASE NO:

```
FILED by PAL    D.C.

   MAR 1 9 2010

  STEVEN M. LARIMORE
  CLERK U.S. DIST. CT.
  S. D. of FLA. – MIAMI
```

## COMPLAINT FOR DECLARATORY RELIEF

    Plaintiff, Mid-Continent Casualty Company ("MCC"), sues the Defendants, JDM

Builders, Inc. ("JDM"), Lennar Homes, LLC f/k/a Lennar Homes, Inc. ("Lennar Homes"), and

U.S. Home Corporation ("U.S. Home") (collectively "Lennar") for declaratory relief as follows:

    1.    This is an action for declaratory relief pursuant to 28 U.S.C. §2201 for the

purposes of determining an actual controversy between the parties as to the scope of MCC's duty

to indemnify under its contract of insurance with JDM.

    2.    The plaintiff, MCC, is an Ohio Corporation with its principle place of business in

Tulsa, Oklahoma.

    3.    The defendant, JDM, is a Florida Corporation with its principle place of business

in Lee County, Florida.

    4.    The defendant, Lennar Homes,  is a Florida corporation with its principle place of

business in Miami, Florida.

Case No.:

5.    The defendant, U.S. Home, is a Delaware corporation authorized to conduct business in the state of Florida.

6.    Jurisdiction is proper because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest and costs.

7.    Venue is proper in the United States District Court for the Southern District of Florida, Miami Division, because one or more defendants reside here and the events or omissions giving rise to the claims set forth below occurred here.

8.    MCC entered into a contract of insurance with JDM, policy No. 04-GL-000656797 which was in effect from 9/23/06 to 9/23/07, with limits of liability of $1,000,000 per occurrence and $2,000,000 in the aggregate.  A copy of the policy is attached as Exhibit "A" (the "Policy").

9.    The Policy contains the following relevant  provisions:

**COVERAGE   A   BODILY   INJURY   AND   PROPERTY   DAMAGE LIABILITY**

**1.    Insuring Agreement**

   a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damages" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance doe not apply.  We may at our discretion investigate any occurrence" and settle any claim or "suit" that may result. But:

      (1)    The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

      (2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments Coverages A and B.

2

Case No.:

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" occurs during the policy period; and

(3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II—Who Is An Insured and no "employee" authorized by you to give or receive notice on an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to he policy period.

* * *

## 2.    Exclusions

This insurance does not apply to:

* * *

### b.    Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)**    That the insured would have in the absence of the contract or agreement; or

**(2)**    Assumed in a contract or agreement that is an "insured contract", provided the 'bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)**    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

3

Case No.:

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

**f.    Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(2)** Any loss, cost, or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants", or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

4

Case No.:

* * *

**j.   Damage To Property**

Property damage to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another s property;

**(2)** Premises you sell, give away or abandon, if the property damage arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations; or

**(6)** That particular part of any property that must be restored repaired or replaced because your work was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to property damage (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.  A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are your work and were never occupied, rented or held for rental by you. Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.  Paragraph (6) of this exclusion does not apply to property damage included in the products completed operations hazard.

* * *

**k.   Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

* * *

**m.   Damage To Impaired Property Or Property Not Physically Injured**

14464918v1 906235 56475

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.  Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency. inadequacy or dangerous condition in it.

\* \* \*

**SECTION V- DEFINITIONS**

\* \* \*

**8.**  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.  You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or

14464918v1 906235 56475

Case No.:

b.      Your fulfilling the terms of the contract or agreement.

\* \* \*

15.     "Pollutants" mean any solid, liquid, gaseous or vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16.     "Products-completed operations hazard":

a.      Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)     Products that are still in your physical possession; or

(2)     Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

(a)     When all of the work called for in your contract has been completed.

(b)     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.      Does not include "bodily injury" or "property damage" arising out of:

(1)     The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2)     The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3)     Products or operations for which the classification, listed in the Declarations or in a policy schedule, states the products completed operations are subject to the General Aggregate Limit.

17.     "Property damage" means:

7

Case No.:

    a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

21.    "Your product" means:

    a.    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    (1)    You;

    (2)    Others trading under your name; or

    (3)    A person or organization whose business or assets you have acquired; and

    b.    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    b.    The providing of or failure to provide warnings or instructions.

    "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

22.    "Your work" means":

    a.    Work or operations performed by you or on your behalf; and

    b.    Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

    a.    Warranties or representatives made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    b.    The providing of or failure to provide warnings or instruction.

14464918v1 906235 56475

Case No.:

\* \* \*

## EXCLUSION—DAMAGE TO WORK PERFORMED BY
## SUBCONTRACTORS ON YOUR BEHALF (CG 22 94 10 01)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion l. of Section I-Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

2.      Exclusions

This insurance does not apply to:

l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

10.      JDM was sued by Lennar in the Eleventh Circuit Court in and for Miami-Dade County, Florida.  A copy of the complaint is attached as Exhibit B ("Underlying Action").[1]

11.      Lennar subcontracted the work to JDM who was the drywall subcontractor that installed the drywall at the project (the "Project").

12.      In the Underlying Action, Lennar seeks damages allegedly caused by JDM's defective work/defective product.  These damages include the cost to remove and replace the defective work/defective product, economic loss in the nature of relocation expenses and to Lennar's goodwill and reputation, as well as damage to other property caused by the insured's defective work/defective product attorney's fees and expert witness fees.

13.      Lennar was the owner of the Project prior to conveying title to the specific home to the purchaser.

---

[1]      The complaint states that Lennar does not currently have a copy of the subcontract between Lennar and JDM.  MCC does not have a copy of the subcontract, but it will be obtained during discovery, if one exists.

14464918v1 906235 56475

Case No.:

14.   JDM tendered the Underlying Action to MCC for a defense and complete indemnification in the event of a judgment against it in the Underlying Action.

15.   MCC is currently defending JDM, subject to a full and complete reservation of rights.

16.   Lennar Homes and U.S. Homes are necessary parties to this action as their rights will be impacted by the court's determinations.

### COUNT I – NO DUTY TO INDEMNIFY FOR DAMAGES THAT DO NOT CONSTITUTE PROPERTY DAMAGE OR DID NOT TAKE PLACE DURING THE POLICY PERIOD

17.   MCC realleges paragraphs 1 through 16 as paragraph 17 of Count I.

18.   MCC's duty to indemnify is limited to pay damages because of property damage caused by an occurrence.  To the extent Lennar is seeking to recover from JDM the cost to repair and replace JDM's defective work/defective product, as opposed to damage caused by JDM's defective work/defective product, or damages for economic losses as such damages do not meet the definition of property damage.

19.   MCC's duty to indemnify is limited to property damage that occurs during the policy period.  To the extent Lennar is seeking to recover from JDM any damages that did not take place during the policy period, MCC has no duty to indemnify JDM.

20.   In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to indemnify its insured in the Underlying Action and in particular to:

a.   Whether MCC has an obligation to indemnify JDM for the cost to remove and replace the defective work/defective product;

14464918v1 906235 56475

Case No.:

      b.      Whether MCC has an obligation to indemnify JDM for the cost to remove, repair and replace undamaged property in order to remove and replace the defective work/defective product for which no coverage is provided under the policy;

      c.      Whether MCC has an obligation to indemnify JDM for economic damages and;

      d.      Whether MCC has an obligation to indemnify JDM for only the damages, if any, that took place during the policy period.

21.      Without this Court's declaration, the Underlying Action cannot be settled, as the parties are in doubt as to what damages constitutes property damage under the Policy.

22.      Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Policy.

Wherefore, MCC respectfully requests this Court to:

      a.      Take jurisdiction over this matter;

      b.      Find and declare that MCC's obligation under its Policy is limited to indemnifying JDM for property damage, if any, as that term is defined in the Policy;

      c.      Find and declare that MCC's obligation under its policy is limited to indemnifying JDM for property damage that took place during the policy period; and

      d.      Enter any other order the Court deems proper under the evidence and circumstances.

### COUNT II – NO DUTY TO INDEMNIFY FOR
### DAMAGES EXCLUDED FROM COVERAGE

23.      MCC realleges paragraphs 1 through 16 as paragraph 23 of Count II.

24.      JDM entered into a subcontract to install drywall.

14464918v1 906235 56475

Case No.:

25.     The MCC policy contains the breach of contract, your work, your product, damage to work performed by subcontractors on your behalf, pollution, impaired property and recall exclusions.

26.     In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to indemnify its insured in the Underlying Action.

27.     Without this Court's declaration, the Underlying Action cannot be settled, as the parties are in doubt as to what damages are covered under the Policy.

28.     Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Policy.

Wherefore, MCC respectfully requests this Court to:

a.      Take jurisdiction over this matter;

b.      Find and declare that MCC's obligation under its Policy is limited to indemnifying JDM for damages, if any not excluded by the Policy; and

c.      Enter any other order the Court deems proper under the evidence and circumstances.

Dated: March 18, 2010, 2010.

Ronald L. Kammer
Florida Bar No. 360589
rkammer@hinshawlaw.com
Pedro E. Hernandez
Florida Bar No. 30365
phernandez@hinshawlaw.com
HINSHAW & CULBERTSON LLP
9155 S. Dadeland Boulevard, Suite 1600
Miami, Florida 33156-2741
Telephone: 305-358-7747
Facsimile: 305-577-1063
*Counsel for Mid-Continent Casualty Company*

14464918v1 906235 56475

# EXHIBIT A



# MID-CONTINENT CASUALTY COMPANY
P. O. Box 1409    Tulsa, Oklahoma  74101
## POLICY  DECLARATION

| Policy No. | 04-GL-000656797 |
|---|---|

**Named Insured and Mailing Address**

JDM BUILDERS, INC.
2783 N AIRPORT ROAD #310
FT MYERS FL 33901

**Agent Name and Mailing Address**

FLORIDA HOMEBUILDERS INSURANCE       09-0152
AGENCY
2600 CENTENNIAL PLACE
TALLAHASSEE FL 32308

Policy Period:  From **09/23/2006**  To **09/23/2007**   at 12:01 A.M. Standard Time at your mailing address as shown above.

Business Description:  **DRYWALL, STUCCO, SCREEN ENCLOSURE**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | PREMIUM |
|---|---|
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ 32,474 |
| OWNERS AND  CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART | $ |
| PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART | $ |
| RAILROAD PROTECTIVE LIABILITY COVERAGE PART | $ |
| TOTAL | $ 32,474 |

**REPORTING BASIS:**

Form(s) and Endorsement(s) made a part of this policy at this time*:

| | | | | | |
|---|---|---|---|---|---|
| CG0300(01/96) | ML1439(11/04) | ML1344(11/04) | MI9054(02/02) | MI9046(05/01) | IL0021(07/02) |
| IL0017(11/98) | CG2426(07/04) | CG2196(03/05) | CG2147(07/98) | CG0220(12/04) | CG0067(03/05) |
| CG0001(12/04) | CG2135(10/01) | ML1215(11/04) | CG2134(01/87) | CG2234(07/98) | CG2279(07/98) |
| CG2294(10/01) | ML1001(11/04) | ML1217(11/04) | ML1251(11/04) | ML1354(11/04) | |

*Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations.

Countersigned at:      **TALLAHASSEE FL**
Date:                          09/19/2006

By _____
Authorized Representative

ML 14 87 (01 97)                              **INSURED COPY**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

### DECLARATION

Effective Date: 09/23/2006 **
12:01 A.M. Standard Time

Policy No.   04-GL-000656797

| LIMITS OF INSURANCE | | |
|---|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $ | 2,000,000 |
| Products-Completed Operations Aggregate Limit | $ | 2,000,000 |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Damage to Premises Rented To You | $ | 100,000   Any One Premises |
| Medical Expense Limit | $ | EXCLUDED   Any One Person |

**BUSINESS DESCRIPTION AND LOCATION OF PREMISES**

Form of Business: **CORPORATION**

Business Description*: **DRYWALL, STUCCO, SCREEN ENCLOSURE**

Location of All Premises You Own, Rent or Occupy:

**PREMIUM**

| Location Classification | Code No. | Premium Basis A)Area C)Cost P)Payroll U)Per Unit S)Gross Sales T)See Desc. | Rate Pr/Co   All Other | Advance Premium Pr/Co   All Other |
|---|---|---|---|---|
| SEE ATTACHED SCHEDULE | | | | |

| Minimum Premiums | | | | |
|---|---|---|---|---|
| All Other | $ | 204 | | |
| Pr/Co | $ | 561 | | |
| Policywriting | $ | 500 | Total Advance Premium | $ 10,171.    $ 22,303. |

**FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)**

Forms and Endorsements applying to the Coverage Part and made part of this policy at time of issue:

*Information omitted if shown elsewhere in the policy.                                    **Inclusion of date optional.
These declarations are part of the policy declarations containing the name of the insured and the policy period.

ML 15 07 (09 01)

## COMMERCIAL GENERAL LIABILITY
## EXTENSION OF DECLARATION

**Policy No.**      04-GL-000656797

| PREMIUM<br>Location<br>Classification | Code No. | Premium Basis<br>A)Area   C)Cost<br>P)Payroll   U)Per Unit<br>S)Gross Sales   T)See Desc. | | Rate<br>Pr/Co | All Other | Advance Premium<br>Pr/Co | All Other |
|---|---|---|---|---|---|---|---|
| **FLORIDA**<br>Dry Wall or Wallboard Installation | 92338 | P) | 300,000 | 2.483 | 10.813 | 745. | 3,244. |
| Plastering or Stucco Work | 98449 | P) | 300,000 | 14.754 | 21.307 | 4,426. | 6,392. |
| Plastering or Stucco Work | 98449 | P) | 16,700 | 14.754 | 21.307 | 246. | 356. |
| Contractors - subcontracted work - in connection with building construction, reconstruction, repair or erection - one or two family dwellings | 91583 | C) | 100,000 | 4.934 | 1.962 | 493. | 196. |
| Door, Window or Assembled Millwork - installation - metal | 91746 | P) | 500,000 | 8.522 | 22.730 | 4,261. | 11,365. |
| SEE ENDORSEMENT ML1215<br>Per Each | 49950 | T) | 3 | | 250.000 | | 750. |

Extension of Declarations - Total Advanced Premium

POLICY NUMBER: **04-GL-000656797**

COMMERCIAL GENERAL LIABILITY
CG 03 00 01 96

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Amount and Basis of Deductible | | |
| --- | --- | --- | --- |
| | PER CLAIM | or | PER OCCURRENCE |
| Bodily Injury Liability | $ | | $ |
| OR | | | |
| Property Damage Liability | $ 1000 | | $ |
| OR | | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

**1. PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

**a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

**b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

**c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

CG 03 00 01 96          Copyright, Insurance Services Office, Inc., 1994          Page 1 of 2          □

**2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

**a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

**b.** Under Property Damage Liability Coverage, to all damages because of "property damage"; or

**c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**C.** The terms of this insurance, including those with respect to:

**1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

**2.** Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

    Copyright, Insurance Services Office, Inc., 1994    CG 03 00 01 96    □

POLICY NUMBER: **04-GL-000656797**                                    **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of your work:**
    **ALL CONSTRUCTION OPERATIONS IN THE FOLLOWING STATES: CA**
    **WA, NV, AZ, CO, WI, NJ, DE, IL, SC, NY, HI, OH, LA**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

CG 21 34 01 87                    Copyright, Insurance Services Office, Inc.,  1986                    **Page 1 of 1**            □

POLICY NUMBER:  04-GL-000656797

COMMERCIAL GENERAL LIABILITY
CG 21 35 10 01

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description And Location Of Premises Or Classification:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section I – Coverage **C** – Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

2. The following is added to Section I – Supplementary Payments:

   **h.** Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

CG 21 35 10 01

© ISO Properties, Inc.,  2000

Page 1 of 1   ☐

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# EXTERIOR INSULATION AND FINISH SYSTEM ENDORSEMENT

This endorsement modifies insurance under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Unless so indicated below, the "Exterior Insulation and Finish System Hazard" is included within the Limit of Insurance.

☐　**A.**　If so indicated, the "Exterior Insulation and Finish System Hazard" is limited to:

$ _____ Aggregate

$ _____ Deductible Per Claim

☒　**B.**　If so indicated, this insurance does not apply to "Property Damage" arising out of the "Exterior Insulation and Finish System Hazard".

Definition

1.　"Exterior Insulation and Finish System Hazard" means the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling service, correction, or replacement, of an "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system when performed by you or on your behalf; or

Any work or operations with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system" is used on any part of that structure when performed by you or on your behalf.

2.　"Exterior Insulation and Finish System" means:

　a.　A rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

　b.　The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

　c.　A reinforced base coat; and

　d.　A finish coat providing surface texture and color.

All other conditions remain unchanged

ML 10 01 (11 04)　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# OWNERS, LESSEES OR CONTRACTORS
## ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

**LENNAR CORP, US HOME CORP**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**WHO IS AN INSURED (Section II)** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability directly attributable to your performance of "your work" for that insured.

This amendment applies only when you have agreed by written "insured contract" to designate the person or organization listed above as an additional insured subject to all provisions and limitations of this policy.

ML 12 15 (11 04)                                                                                   Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# OWNERS, LESSEES OR CONTRACTORS
# ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

**LENNAR CORPORATION, INCLUDEING ITS SUBSIDIARIES, AFFILIATED
COMPANIES AND SUCCESSORS**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**WHO IS AN INSURED (Section II)** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability directly attributable to your performance of "your work" for that insured.

This amendment applies only when you have agreed by written "insured contract" to designate the person or organization listed above as an additional insured subject to all provisions and limitations of this policy.

ML 12 15 (11 04)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OWNERS, LESSEES OR CONTRACTORS
# ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

**THE RYLAND GROUP INC & ITS SUBSIDIARIES, AFFILIATED AND
SUCCESSOR COMPANIES**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**WHO IS AN INSURED (Section II)** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability directly attributable to your performance of "your work" for that insured.

This amendment applies only when you have agreed by written "insured contract" to designate the person or organization listed above as an additional insured subject to all provisions and limitations of this policy.

ML 12 15 (11 04)

Page 1 of 1

Named Insured: **JDM BUILDERS, INC.**
Policy Number: **04-GL-000656797**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

# EXCLUSION - WATER DAMAGE ARISING
# OUT OF ROOFING OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**DEDUCTIBLE $ 1000_____ per claim**

**(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).**

This insurance does not apply to "property damage" to any building or structure or its contents resulting from the influx of rain, snow, sleet or hail arising out of the Insured's roofing operations; unless
1. The contractor has taken prudent steps to determine any approaching adverse weather; and
2. The contractor has provided a suitable temporary covering, able to withstand the normal elements.

This exclusion does not apply to "property damage" included in the "products-completed operations hazard."

All other conditions remain unchanged

ML 13 54 (11 04)                                                                                    Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 04

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

  **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

  This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

© ISO Properties, Inc., 2003

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

© ISO Properties, Inc., 2003

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

  **(a)** Less than 26 feet long; and

  **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

  **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

  **(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

          © ISO Properties, Inc., 2003          CG 00 01 12 04      □

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or danger-ous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and ac-cidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or ex-pense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, re-placement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and ad-vertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or tempo-rarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured be-comes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "per-sonal and advertising injury" to which this in-surance does not apply. We may, at our discre-tion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insur-ance in the payment of judgments or set-tlements under Coverages **A** or **B** or medi-cal expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless ex-plicitly provided for under Supplementary Pay-ments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and adver-tising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowl-edge that the act would violate the rights of an-other and would inflict "personal and advertis-ing injury".

 © ISO Properties, Inc., 2003

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

© ISO Properties, Inc., 2003

CG 00 01 12 04

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and

         (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

   a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

   b. The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

© ISO Properties, Inc., 2003

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage **C**;

b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage **A**; and

b. Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

 © ISO Properties, Inc., 2003

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

© ISO Properties, Inc., 2003

### 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

 © ISO Properties, Inc., 2003 CG 00 01 12 04   □

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

   **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

   © ISO Properties, Inc., 2003     □

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2003

COMMERCIAL GENERAL LIABILITY
CG 00 67 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

COMMERCIAL GENERAL LIABILITY
CG 02 20 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

**a. For 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with the underwriting requirements established by the insurer.

**b. For More Than 90 Days**

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained by a material misstatement;

**(3)** Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

**(4)** A substantial change in the risk covered by the policy; or

**(5)** The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

**B.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

　**(a)** Refusal to employ that person;

　**(b)** Termination of that person's employment; or

　**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

　**(a)** Refusal to employ that person;

　**(b)** Termination of that person's employment; or

　**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Properties, Inc., 2004

COMMERCIAL GENERAL LIABILITY
CG 22 34 07 98

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

2. Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

     Copyright, Insurance Services Office, Inc.,  1997         ☐

COMMERCIAL GENERAL LIABILITY
CG 22 79 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to Paragraph **3.** below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

CG 22 79 07 98          Copyright, Insurance Services Office, Inc., 1997          Page 1 of 1      □

COMMERCIAL GENERAL LIABILITY
CG 22 94 10 01

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **I.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

© ISO Properties, Inc.,  2000

COMMERCIAL GENERAL LIABILITY
CG 24 26 07 04

POLICY NUMBER:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2004

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

IL 00 21 07 02                    © ISO Properties, Inc., 2001                    Page 1 of 2

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **(a)** Any "nuclear reactor";

   **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc.,  2001
IL 00 21 07 02      □

## MID-CONTINENT GROUP®
## PRIVACY NOTICE
## AND
## NOTICE OF INFORMATION PRACTICES

The member of Mid-Continent Group ("Mid-Continent," including those companies listed at the end of this Notice) respect your right to privacy.

We want you to know about our procedures for protecting your privacy and your rights and responsibilities regarding information we receive about you. We want you to understand how we gather information about you, how we protect it, and how you can help ensure its accuracy. Although we may provide this Notice as information to additional persons, the terms of this Notice apply to those individuals who inquire about or obtain insurance from Mid-Continent primarily for personal, family or household purposes, and certain group insurance plans. We will provide our customers with a copy of the most recent notice of our privacy policy at least annually and more often if we make any changes affecting their rights under our privacy policy. This Notice applies to current and former customers of Mid-Continent, but does not in any way imply or affect insurance coverage. You can find the online version of this Notice on our web site at www.mcg-ins.com.

Because Mid-Continent does not share your information outside of permitted exceptions, there is no need for you to take any action under this Notice. If we change our practices in the future, we will advise you and, if applicable, enable you to "opt-out" of certain sharing.

### 1.   What kind of information is collected about you?

We get most of our information about you directly from you, such as your name, address, social security number, income level and certain other financial information, on insurance applications and other forms that you provide to us. While in some cases the information you provide to your insurance representative during the insurance application process gives us all the information we need to evaluate you or your property for insurance, there are instances when we may need additional information or may need to verify information you have given us. In those cases, we may obtain information from outside sources at our own expense.

It is common for an insurance company to ask an independent source to verify and supplement information given on an insurance application. There are many such independent companies, commonly called "consumer reporting agencies," which are in the business of providing independent information to insurance and other financial services companies. We will treat the information we receive about you from an independent reporting agency in accordance with the terms of this Notice. Upon our receipt of your written request sent to the address set forth in Section 5, we will inform you of the name and address of any agency we have used to prepare a report on you so that you can contact the agency.

Once you have been an insured customer of ours for a period of time, your record may contain information related to our experiences and transactions with you, such as insurance policy coverage, premiums and payment history, and any claims you make under your insurance policy. For example, information collected by a claims representative and any policy or fire report will be retained by us. Any information that we collect in connection with an insurance claim will be kept in accordance with this Notice.

Each company within Mid-Continent Group may disclose information about you to an affiliate regarding its transactions and experiences with you (such as your payment or claims history). We do not currently share other credit-related information, except as permitted or required by law.

Finally, we do use "cookies" when you interact with our web sites to make that experience easy and meaningful for you. When you visit our web site, our web server sends a cookie to your computer. A cookie is an electronically transmitted file that holds small pieces of information. When you navigate through our web site, your browser "requests" pages for you to view, and that request will include the information stored in the cookie we previously sent to your computer. This process is like an electronic "handshake" between our system and your computer; the information exchanged allows us to recognize your browser.

Cookies are used to collect and store only the following information: the visitor's domain name, the Internet address of the web site from which the visitor linked directly to our web site, the pages of our site that the visitor views and the length of time spent on each page, browser and operating system platform type, and the date and time the visitor accessed our site.

MI 90 46 (05 01)

Cookies, as well as data taken from them, do not identify you personally. They merely recognize your browser. Unless you choose to identify yourself to us, either by responding to a promotional offer, buying a policy, or registering for an online service, you remain anonymous.

Session cookies exist only during an online session with Mid-Continent. Session cookies allow you to conduct transactions or requests on our web site. Without the session cookie information, we would not be able to complete your web transactions securely. Session cookies help us make sure you are who you say you are after you have logged in. We do not sell this or any other information about you to other web sites, merchants or financial institutions.

**2.    What do we do with information about you?**

Information about you will be kept in our insurance policy records. We will refer to and use that information for purposes related to issuing and servicing insurance policies and settling claims. Generally, personal information about you in our records will not be disclosed by us to any external organization without your prior authorization. However, we may, as permitted by law, share information about you contained in our files with certain persons or organizations such as:

> your insurance representative,
>
> persons who represent you in a fiduciary capacity, including your attorney or trustee, or who have a legal interest in your insurance policy,
>
> adjusters, appraisers, auditors, investigators and attorneys,
>
> persons or organizations who need the information to perform a business, professional or insurance function for us,
>
> other insurance companies, agents or consumer reporting agencies as information is needed in connection with any insurance application, policy or claim involving you,
>
> medical professionals to inform you of a medical condition of which you may not be aware,
>
> persons or organizations that conduct research, including actuarial or underwriting studies, provided that no individual information may be identified in any research study report,
>
> persons or organizations that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements,
>
> our affiliated companies,
>
> to a court, state insurance department or other government agency pursuant to a summons, court order, search warrant, subpoena, or as otherwise required by law or regulation.

**3.    Who has access to your information?**

Mid-Continent currently incorporates a system of passwords and other appropriate physical, electronic and procedural safeguards to protect against unauthorized access to potentially private information. We will educate our employees about the terms of this Notice and the importance of confidentiality and customer privacy. Employees who gain unauthorized access or who otherwise violate our privacy policy are subject to disciplinary action up to and including termination of employment. We plan to monitor and evaluate our information security program and available security software in light of relevant changes in technology to determine ways to increase protections to the security or integrity of our records and information.

4. **How can you review recorded information about you?**

Generally, you have the right to review and receive a copy of the recorded personal information about you contained in our files with respect to a particular policy number, except for certain legal and medical documents. You have the further rights to request that we correct any of this information. To exercise these rights, you must send to us a notarized request at the address set forth below stating your complete name, address, insurance policy number, daytime phone number, and a copy of your driver's license or other personal identification. If you believe any information is incorrect, we will investigate and correct it if we can substantiate the error. Even if we do not correct the information, you have the right to file with us a written statement of dispute which we will include in any future disclosure of the information.

5. **How can you contact us?**

If, after reading this, you have any questions about our privacy policy, please write to us at the following address:

MID-CONTINENT GROUP
1437 S. Boulder
Suite 200
Tulsa, OK 74119
Attn: Compliance Office - Privacy

Mid-Continent Casualty Company
Mid-Continent Insurance Company
Oklahoma Surety Company

# CONTACT INFORMATION SHEET

# STATE OF FLORIDA

IMPORTANT NOTICE

To obtain information or make a complaint:

You may call Mid-Continent Casualty Company's toll-free telephone number for information or to make a complaint at:

      1-800-722-4994

You may contact the Florida Department of Insurance to obtain information on companies, coverages, rights or complaints at:

      1-800-342-2762

You may write the Florida Department of Insurance at:

      200 East Gaines Street
      Tallahassee, FL  32399-0300

PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim you should contact the agent or Mid-Continent Casualty Company first.  If the dispute is not resolved, you may contact the Florida Department of Insurance.

ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# FUNGUS, MILDEW AND MOLD EXCLUSION

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal and advertising injury" or "medical payments" arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any fungus, mildew, mold or resulting allergens;

2. Any costs or expenses associated, in any way, with the abatement, mitigation, remediation, containment, detoxification, neutralization, monitoring, removal, disposal or any obligation to investigate or assess the presence or effects of any fungus, mildew, mold or resulting allergens; or

3. Any obligation to share with or repay any person, organization or entity, related in any way to items **1** and **2.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# AMENDATORY ENDORSEMENT

# EXCLUSION - INJURY OR DAMAGE FROM EARTH MOVEMENT

# STATE OF FLORIDA

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" arising out of, caused by, resulting from, contributed to, aggravated by, or related to earthquake, landslide, mudflow, subsidence, settling, slipping, falling away, shrinking, expansion, caving in, shifting, eroding, rising, tilting or any other movement of land, earth or mud.

This does not apply to damage created by sinkholes.

ML 12 51 (11 04)

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# EXCLUSION - ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the injury or damage is caused or contributed to by the hazardous properties of asbestos.  This includes:

    **a.**  Any supervision, instructions, recommendations, warnings or advise given or which should have been given in connection with the above; and

    **b.**  Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

All other conditions remain unchanged

ML 13 44 (11 04)

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# EXCLUSION - LEAD

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> OWNERS AND CONTRACTORS LIABILITY COVERAGE FORM
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of lead, lead particles or products containing lead, provided that the injury or damage is caused or contributed to by the hazardous properties of lead.

This includes:

**a.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

**b.** Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

All other conditions remain unchanged

ML 14 39 (11 04)



# MID-CONTINENT CASUALTY COMPANY

P.O. BOX 1409  TULSA, OK 74101-1409

## GENERAL LIABILITY
## GENERAL CHANGE ENDORSEMENT

POLICY NO:  **04-GL-000656797**

**NAMED INSURED AND MAILING ADDRESS**

JDM BUILDERS, INC.
2783 N AIRPORT ROAD #310
FT MYERS FL 33901

**AGENCY AND MAILING ADDRESS**

FLORIDA HOMEBUILDERS INSURANCE            09-0152
AGENCY
2600 CENTENNIAL PLACE
TALLAHASSEE FL 32308

POLICY PERIOD: FROM   **09/23/2006**   TO   **09/23/2007**   at 12:01 A.M. Standard Time at your mailing address shown above

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements,
or declarations of the undermentioned Policy other than as stated below.

ENDORSEMENT NO: 001
EFFECTIVE   10/03/2006            **THIS POLICY IS AMENDED AS SHOWN**

Adding:
Class Code: 049950
Description:
See Endorsement ML1214
Per Each
Exposure: 1
Premium Basis: T)

Adding Form:
ML 1214 07 01  Addl Insd-O/L/C Sched Person

Adding Additional Insured, under form # ML 1214, in favor of:
Name of Person or Organization - BENDERSON DEVELOPMENT COMPANY, LLC
 - SUBSIDIARIES & AFFILIATES

**ADDITIONAL PREMIUM:**                                                    $150.00

**FORMS AND ENDORSEMENTS**
APPLYING TO THIS COVERAGE PART AND MADE PART OF THIS POLICY AT THIS TIME:
  ML1214(07/01)

COUNTERSIGNED AT:   **TALLAHASSEE FL**        DATE:   **10/20/2006**    BY:   *Lucinda C. Reau*
                                                                        Authorized Representative

**INSURED COPY**

MI 90 00 (08 99)

# COMMERCIAL GENERAL LIABILITY
## EXTENSION OF DECLARATIONS

Policy Number **04-GL-000656797**

| PREMIUM<br>Location<br>  Classification | Code No. | Premium Basis<br>A)Area   C)Cost<br>P)Payroll   U)Per Unit<br>S)Gross Sales   T)See Desc. | | Rate<br>Pr/Co | All Other | Advance Premium<br>Pr/Co | All Other |
|---|---|---|---|---|---|---|---|
| **FLORIDA**<br>Dry Wall or Wallboard Installation | 92338 | P) | 300,000 | 2.483 | 10.813 | 745. | 3,244. |
| Plastering or Stucco Work | 98449 | P) | 300,000 | 14.754 | 21.307 | 4,426. | 6,392. |
| Plastering or Stucco Work | 98449 | P) | 16,700 | 14.754 | 21.307 | 246. | 356. |
| Contractors - subcontracted work - in connection with building construction, reconstruction, repair or erection - one or two family dwellings | 91583 | C) | 100,000 | 4.934 | 1.962 | 493. | 196. |
| Door, Window or Assembled Millwork - installation - metal | 91746 | P) | 500,000 | 8.522 | 22.730 | 4,261. | 11,365. |
| SEE ENDORSEMENT ML1215<br>Per Each | 49950 | | 3 | | 250.000 | | 750. |

continued on next page

**Minimum Premiums**
**Policy Writing**
**All Other**
**PR/CO**

| | | |
|---|---|---|
| Extension of Declarations - Total Advanced Premium | | $  22,457. |

ML 15 08 (04 97)

## COMMERCIAL GENERAL LIABILITY
## EXTENSION OF DECLARATIONS

Policy Number **04-GL-000656797**

| PREMIUM Location Classification | Code No. | Premium Basis A)Area C)Cost P)Payroll U)Per Unit S)Gross Sales T)See Desc. | Rate Pr/Co | All Other | Advance Premium Pr/Co | All Other |
|---|---|---|---|---|---|---|
| **FLORIDA** **See Endorsement ML1214** **Per Each** | **49950** | **1** | | **154.000** | | **154.** |

Extension of Declarations - Total Advanced Premium

ML 15 08 (04 97)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION - ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

**BENDERSON DEVELOPMENT COMPANY, LLC
SUBSIDIARIES & AFFILIATES**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**WHO IS AN INSURED (Section II)** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability directly attributable to your performance of ongoing operations for that insured.

This amendment applies only when you have agreed by written "insured contract" to designate the person or organization listed above as an additional insured subject to all provisions and limitations of this policy.

ML 12 14 (07 01)

Page 1 of 1



# MID-CONTINENT CASUALTY COMPANY
### P.O. BOX 1409   TULSA, OK  74101-1409

## ENDORSEMENT SUMMARY

| POLICY NO:  04-GL-000656797 |
| --- |

**NAMED INSURED AND MAILING ADDRESS**
JDM BUILDERS, INC.
2783 N AIRPORT ROAD #310
FT MYERS FL 33901

**AGENCY AND MAILING ADDRESS**          09-0152
FLORIDA HOMEBUILDERS INSURANCE
AGENCY
2600 CENTENNIAL PLACE
TALLAHASSEE FL 32308

POLICY PERIOD: FROM  **09/23/2006**  TO  **09/23/2007**   at 12:01 A.M. Standard Time at your mailing address shown above

**Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements, or declarations of the undermentioned Policy other than as stated below.**

Attached are new and revised endorsements.  Policy transactions are as follows:

| ENDORSEMENT #:   002 | EFF DATE | | |
| --- | --- | --- | --- |
| 002 | 09/23/2006 | | 500.00 |
| | 10/03/2006 | REVISED | 150.00 |
| 001 | | PREVIOUS | 150.00 |
| | | CHANGE | 0.00 |

| TOTAL   ADDITIONAL PREMIUM: | $500.00 |
| --- | --- |

MI 90 48 (08 01)

**INSURED COPY**



# MID-CONTINENT CASUALTY COMPANY

P.O. BOX 1409   TULSA, OK 74101-1409

## GENERAL LIABILITY
### GENERAL CHANGE ENDORSEMENT

POLICY NO:  04-GL-000656797

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS | |
|---|---|---|
| JDM BUILDERS, INC.<br>2783 N AIRPORT ROAD #310<br>FT MYERS FL 33901 | FLORIDA HOMEBUILDERS INSURANCE<br>AGENCY<br>2600 CENTENNIAL PLACE<br>TALLAHASSEE FL 32308 | 09-0152 |

POLICY PERIOD: FROM  09/23/2006  TO  09/23/2007  at 12:01 A.M. Standard Time at your mailing address shown above

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements, or declarations of the undermentioned Policy other than as stated below.

ENDORSEMENT NO: 002
EFFECTIVE  09/23/2006   **THIS POLICY IS AMENDED AS SHOWN**

Adding:
Class Code: 049950
Description:
SEE ENDORSEMENT ML1357
Per Each
Exposure: 1
Premium Basis: T)

Adding Form:
ML 1357 11 04  Addl Insured-O/L/C (Form B)

Adding Additional Insured, under form # ML 1357, in favor of:
Name of Person or Organization
THE RYLAND GROUP INC AND ITS SUBSIDIARIES & AFFILIATES

| ADDITIONAL PREMIUM: | $500.00 |
|---|---|

FORMS AND ENDORSEMENTS
APPLYING TO THIS COVERAGE PART AND MADE PART OF THIS POLICY AT THIS TIME:
ML1357(11/04)

COUNTERSIGNED AT:  TALLAHASSEE FL       DATE:  11/08/2006   BY:  _Lucinda C. Rau_
Authorized Representative

MI 90 00 (08 99)                    **INSURED COPY**                    **PAGE 001**

## COMMERCIAL GENERAL LIABILITY
### EXTENSION OF DECLARATIONS

Policy Number **04-GL-000656797**

| PREMIUM<br>Location<br>Classification | Code No. | Premium Basis<br>A)Area   C)Cost<br>P)Payroll   U)Per Unit<br>S)Gross Sales  T)See Desc. | | Rate<br>Pr/Co | All Other | Advance Premium<br>Pr/Co | All Other |
|---|---|---|---|---|---|---|---|
| **FLORIDA**<br>Dry Wall or Wallboard Installation | 92338 | P) | 300,000 | 2.483 | 10.813 | 745. | 3,244. |
| Plastering or Stucco Work | 98449 | P) | 300,000 | 14.754 | 21.307 | 4,426. | 6,392. |
| Plastering or Stucco Work | 98449 | P) | 16,700 | 14.754 | 21.307 | 246. | 356. |
| Contractors - subcontracted work - in connection with building construction, reconstruction, repair or erection - one or two family dwellings | 91583 | C) | 100,000 | 4.934 | 1.962 | 493. | 196. |
| Door, Window or Assembled Millwork - installation - metal | 91746 | P) | 500,000 | 8.522 | 22.730 | 4,261. | 11,365. |
| SEE ENDORSEMENT ML1215<br>Per Each | 49950 | | 3 | | 250.000 | | 750. |
| continued on next page | | | | | | | |

Minimum Premiums
Policy Writing
All Other
PR/CO

| | |
|---|---|
| Extension of Declarations - Total Advanced Premium | $ 22,803. |

ML 15 08 (04 97)                              **PAGE 00**

## COMMERCIAL GENERAL LIABILITY
### EXTENSION OF DECLARATIONS

Policy Number **04-GL-000656797**

| PREMIUM Location Classification | Code No. | Premium Basis A)Area C)Cost P)Payroll U)Per Unit S)Gross Sales T)See Desc. | | Rate Pr/Co | All Other | Advance Premium Pr/Co | All Other |
|---|---|---|---|---|---|---|---|
| **FLORIDA** **SEE ENDORSEMENT ML1357** Per Each | 49950 | | 1 | | 500.000 | | 500. |

Extension of Declarations - Total Advanced Premium

ML 15 08 (04 97)                    **PAGE 00**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# ADDITIONAL INSURED – OWNERS, LESSEES or CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Name of Person or Organization:
**THE RYLAND GROUP INC AND ITS SUBSIDIARIES & AFFILIATES**

1.  **WHO IS AN INSURED (Section II)** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability directly attributable to your performance of "your work" for that insured.
2.  With respect to **1.** above the following additional provisions apply:
    4.  **Other Insurance**
        The insurance afforded by this Coverage Part is primary insurance and we will not seek contribution from any other insurance available to the insured unless the other insurance is provided by a contractor other than the above named additional insured.  We shall be considered as excess insurance of any other insurance provided by a contractor other than the above named additional insured.

    This amendment applies only when you have agreed by written "insured contract" to designate the person or organization listed above as an additional insured subject to all provisions and limitations of this policy.

All other conditions remain unchanged

ML 13 57 (11 04)                                                                        Page 1 of 1



# MID-CONTINENT CASUALTY COMPANY
P.O. BOX 1409  TULSA, OK  74101-1409
## GENERAL LIABILITY
## GENERAL CHANGE ENDORSEMENT

POLICY NO:  04-GL-000656797

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS |
|---|---|
| JDM BUILDERS, INC.<br>2783 N AIRPORT ROAD #310<br>FT MYERS FL 33901 | FLORIDA HOMEBUILDERS INSURANCE     09-0152<br>AGENCY<br>2600 CENTENNIAL PLACE<br>TALLAHASSEE FL 32308 |

POLICY PERIOD: FROM   09/23/2006   TO   09/23/2007   at 12:01 A.M. Standard Time at your mailing address shown above

**Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements, or declarations of the undermentioned Policy other than as stated below.**

ENDORSEMENT NO: ***
EFFECTIVE   10/03/2006        THIS POLICY IS AMENDED AS SHOWN

**REVISED ENDORSEMENT**
THIS ENDORSEMENT REPLACES PREVIOUSLY ISSUED ENDORSEMENT(S)


***ENDORSEMENT NO: 001
Adding:
Class Code: 049950
Description:
See Endorsement ML1214
Per Each
Exposure: 1
Premium Basis: T)

Adding Form:
ML 1214 07 01  Addl Insd-O/L/C Sched Person


Continued on next page

| ADDITIONAL PREMIUM: | $150.00 |
|---|---|

FORMS AND ENDORSEMENTS
APPLYING TO THIS COVERAGE PART AND MADE PART OF THIS POLICY AT THIS TIME:
ML1214(07/01)

COUNTERSIGNED AT:   **TALLAHASSEE FL**      DATE:   **11/08/2006**   BY:   *Lucinda C. Bell*
Authorized Representative

MI 90 00 (08 99)              **INSURED COPY**              PAGE 001

0066

## GENERAL CHANGE ENDORSEMENT

Continued from prev. page
Adding Additional Insured, under form # ML 1214, in favor of:
Name of Person or Organization - BENDERSON DEVELOPMENT COMPANY, LLC
 - SUBSIDIARIES & AFFILIATES

MI 90 00 (08 99)

## COMMERCIAL GENERAL LIABILITY
## EXTENSION OF DECLARATIONS

Policy Number **04-GL-000656797**

| PREMIUM Location Classification | Code No. | Premium Basis A)Area C)Cost P)Payroll U)Per Unit S)Gross Sales T)See Desc. | | Rate Pr/Co | All Other | Advance Premium Pr/Co | All Other |
|---|---|---|---|---|---|---|---|
| **FLORIDA** Dry Wall or Wallboard Installation | 92338 | P) | 300,000 | 2.483 | 10.813 | 745. | 3,244. |
| Plastering or Stucco Work | 98449 | P) | 300,000 | 14.754 | 21.307 | 4,426. | 6,392. |
| Plastering or Stucco Work | 98449 | P) | 16,700 | 14.754 | 21.307 | 246. | 356. |
| Contractors - subcontracted work - in connection with building construction, reconstruction, repair or erection - one or two family dwellings | 91583 | C) | 100,000 | 4.934 | 1.962 | 493. | 196. |
| Door, Window or Assembled Millwork - installation - metal | 91746 | P) | 500,000 | 8.522 | 22.730 | 4,261. | 11,365. |
| SEE ENDORSEMENT ML1215 Per Each | 49950 | | 3 | | 250.000 | | 750. |
| continued on next page | | | | | | | |

**Minimum Premiums**
**Policy Writing**
**All Other**
**PR/CO**

Extension of Declarations - Total Advanced Premium    $ 22,957.

ML 15 08 (04 97)                    **PAGE 00**

## COMMERCIAL GENERAL LIABILITY
### EXTENSION OF DECLARATIONS

Policy Number **04-GL-000656797**

| PREMIUM<br>Location<br>Classification | Code No. | Premium Basis<br>A)Area        C)Cost<br>P)Payroll     U)Per Unit<br>S)Gross Sales  T)See Desc. | Rate<br>Pr/Co | All Other | Advance Premium<br>Pr/Co | All Other |
|---|---|---|---|---|---|---|
| **FLORIDA**<br>**See Endorsement ML1214**<br>**Per Each** | **49950** | 1 | | 154.000 | | 154. |
| **SEE ENDORSEMENT ML1357**<br>**Per Each** | **49950** | 1 | | 500.000 | | 500. |

Extension of Declarations - Total Advanced Premium

ML 15 08 (04 97)                                    **PAGE 00**

# EXHIBIT B

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO. 09-07901 CA 23

LENNAR HOMES, LLC f/k/a LENNAR
HOMES, INC., a Florida limited liability
company, and U.S. HOME CORPORATION,
a Delaware corporation,

        Plaintiffs,

v.

KNAUF GIPS KG; KNAUF PLASTERBOARD
(TIANJIN) CO., LTD.; TAISHAN GYPSUM CO. LTD.
f/k/a SHANDONG TAIHE DONGXIN CO. LTD.;
BEIJING NEW BUILDING MATERIAL PUBLIC
LIMITED COMPANY; PINGYI ZHONGXING
PAPER-FACED PLASTERBOARD CO. LTD. f/k/a
SHANDONG CHENXIANG BUILDING MATERIALS
CO. LTD.; USG CORPORATION; L&W SUPPLY
CORPORATION d/b/a SEACOAST SUPPLY;
BANNER SUPPLY CO.; BLACK BEAR GYPSUM
SUPPLY, INC.; ALL FLORIDA DRYWALL SUPPLIES
INC.; LA SUPREMA TRADING, INC.; LA SUPREMA
ENTERPRISE, INC.; ROTHCHILT INTERNATIONAL
LTD.; INDEPENDENT BUILDERS SUPPLY
ASSOCIATION, INC.; PRO-BUILD HOLDINGS, INC.,
f/k/a ROSEN BUILDING SUPPLIES, INC.; BILL
PFANNKUCH FRAMING INC.; BMD, INC.; RESIDENTIAL
DRYWALL, INC.; J.D.M. BUILDERS INC.; MDW
DRYWALL, INC. f/k/a MCCOY DRYWALL, INC.;
NORTHEAST DRYWALL CO.; FLORIDA STYLE
SERVICES, INC.; OCEAN CONSTRUCTION, INC.; B&B
STUCCO, INC.; HARRELL'S DRYWALL, INC.; S.D. &
ASSOCIATES, INC.; ALL COUNTY DRYWALL SERVICE,
INC.; ALPHA & OMEGA CONTRACTORS, INC.; ACTIVE
DRYWALL SOUTH, INC.; 1ST DRYWALL, LLC; DESIGN
DRYWALL OF SOUTH FLORIDA, LLC; and A B C
DRYWALL, CORPORATION;

        Defendants.

_____/

THE ORIGINAL
FILED ON

JUN 1 0 2009

IN THE OFFICE OF
CIRCUIT COURT DADE CO. FL

## **FIRST AMENDED COMPLAINT**

Plaintiffs, Lennar Homes, LLC, formerly known as Lennar Homes, Inc. ("Lennar Homes") and U.S. Home Corporation ("U.S. Home") (collectively, "Lennar"), hereby sue Defendants, Knauf Gips KG ("Knauf Gips"); Knauf Plasterboard (Tianjin) Co., Ltd. ("Knauf Tianjin"); Taishan Gypsum Co. Ltd. f/k/a Shandong Taihe Dongxin Co. Ltd. ("Taishan"); Beijing New Building Material Public Limited Company ("BNBM"); Pingyi Zhongxing Paper-Faced Plasterboard Co., Ltd. f/k/a Shandong Chenxiang Building Materials Co. Ltd. ("Chenxiang"); USG Corporation ("USG"); L&W Supply Corporation d/b/a Seacoast Supply ("Seacoast"); Banner Supply Co. ("Banner"); Black Bear Gypsum Supply, Inc. ("Black Bear"); All Florida Drywall Supplies Inc. ("All Florida"); Pro-Build Holdings, Inc. f/k/a Rosen Building Supplies, Inc. ("Rosen"); La Suprema Trading, Inc. ("La Suprema Trading"); La Suprema Enterprise, Inc. ("La Suprema Enterprise"); Rothchilt International Ltd. ("Rothchilt"); Independent Builders Supply Association, Inc. ("IBSA"); Bill Pfannkuch Framing Inc. ("Pfannkuch"); BMD, Inc. ("BMD"); Residential Drywall, Inc. ("Residential"); J.D.M. Builders Inc. ("J.D.M."); MDW Drywall, Inc., f/k/a McCoy Drywall, Inc. ("McCoy"); Northeast Drywall Co. ("Northeast"); Florida Style Services, Inc. ("Florida Style"); Ocean Construction, Inc. ("Ocean"); B&B Stucco, Inc. ("B&B Stucco"); Harrell's Drywall, Inc. ("Harrell's Drywall"); S.D. & Associates, Inc. ("S.D.A."); All County Drywall Service, Inc. ("All County Drywall"); Alpha & Omega Contractors, Inc. ("Alpha & Omega"); Active Drywall South, Inc. ("Active Drywall"); 1st Drywall, LLC ("1st Drywall"); Design Drywall of South Florida, LLC ("Design Drywall"); and A B C Drywall, Corporation ("ABC Drywall"), and allege as follows:

### The Parties, Jurisdiction and Venue

1.   This is an action for damages in excess of $150,000.00, exclusive of interest, costs, and attorneys' fees.

2.   Lennar Homes is a Florida limited liability company with its principal place of

business in Miami-Dade County, Florida. U.S. Home is a Delaware corporation authorized to do and doing business in the State of Florida.

3.     Both Lennar Homes and U.S. Home are affiliates of Lennar Corporation, one of the nation's leading builders of quality homes. Lennar Corporation and its affiliates (like Lennar Homes and U.S. Home) have built homes in seventeen states, including Arizona, California, Colorado, Florida, Delaware, Illinois, Maryland, Nevada, New Jersey, New York, North Carolina, Pennsylvania, South Carolina, Texas, Virginia, and Wisconsin. Since its founding in 1954, Lennar Corporation and its affiliates have built over 700,000 homes in hundreds of communities across the United States. In addition to home construction, Lennar also offers services in such related areas as financial services, mortgages, title insurance, insurance, real estate development and planning, and residential community planning and development.

4.     Both Lennar Homes and U.S. Home are developers of homes in numerous communities throughout the State of Florida.

5.     Defendant Knauf Gips is a German corporation doing business in the State of Florida. One of Knauf Gips' affiliates, Gebr. Knauf Verwaltungsgsellschaft KG, owns a substantial stake in USG. Knauf Gips is a leading manufacturer of building materials and systems. Knauf Gips, together with its affiliates, including Knauf Tianjin, provides building materials and systems to customers in over 50 countries, including the United States. Upon information and belief, at all material times hereto, Knauf Gips supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Knauf Tianjin and its agents, apparent agents, and employees.

6.     Among other things, in 1995, Knauf Gips introduced its advanced production techniques and technology into China. From 1997 through 2001, Knauf Gips invested in China

3

and established three plasterboard plants which are located in Wuhu, Tianjin and Dongguan. The product quality of all Knauf Gips' plants in China, including Knauf Tianjin, are strictly controlled according to the requirements of Knauf Gips' headquarters in Germany. Moreover, Knauf Gips' sales and technical support teams support Knauf Gips' businesses throughout the world, including Knauf Tianjin in China. Knauf Tianjin and its employees are the actual and/or apparent agents of Knauf Gips.

7. Upon information and belief, Knauf Gips, together with its affiliates and/or actual or apparent agents, including Knauf Tianjin, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Florida. Upon information and belief, Knauf Gips and/or Knauf Tianjin have continuously and systematically distributed and sold drywall to numerous purchasers in the State of Florida and their drywall is installed in numerous homes in Florida. As discussed more fully below, Knauf Gips and/or Knauf Tianjin manufactured and sold, directly and indirectly, to certain suppliers in the State of Florida, including Defendants USG, Seacoast, Banner, La Suprema Trading, La Suprema Enterprise, Black Bear, IBSA, Rothchilt and/or All Florida, defective gypsum drywall that was installed in homes being built by Lennar, thereby causing substantial damage to Lennar in Florida. Moreover, Knauf Gips and/or Knauf Tianjin purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Florida and by hiring agents within the State of Florida to investigate the very allegations at issue in this lawsuit.

8. Defendant Knauf Tianjin is a Chinese corporation doing business in the State of Florida. Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall. Knauf

4

Tianjin is the actual agent and/or apparent agent of Knauf Gips. Upon information and belief, Knauf Tianjin, individually and/or together with and at the direction and control of its principal, Knauf Gips, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Florida. Knauf Tianjin and/or Knauf Gips have continuously and systematically distributed and sold drywall to numerous purchasers in the State of Florida and their drywall is installed in numerous homes in Florida. As discussed more fully below, Knauf Tianjin and/or Knauf Gips manufactured and sold, directly and indirectly, to certain suppliers in the State of Florida, including Defendants USG, Seacoast, Banner, La Suprema Trading, La Suprema Enterprise, Black Bear, IBSA, Rothchilt and/or All Florida, defective gypsum drywall that was installed in homes being built by Lennar, thereby causing substantial damage to Lennar in Florida. Moreover, Knauf Tianjin and/or Knauf Gips purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Florida and by hiring agents within the State of Florida to investigate the very allegations at issue in this lawsuit.

9.    Defendant Taishan is a Chinese corporation doing business in the State of Florida. Taishan is involved in the manufacturing and sale of gypsum drywall. Upon information and belief, Taishan manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Florida. Taishan has continuously and systematically distributed and sold drywall to numerous purchasers in the State of Florida and Taishan's drywall is installed in numerous homes in Florida. As discussed more fully below, and upon information and belief, Taishan manufactured and sold to certain suppliers in the State

5

of Florida, defective gypsum drywall that was installed in homes being built by Lennar, thereby causing substantial damage to Lennar in Florida. Moreover, Taishan purposefully availed itself of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Florida.

10.    Defendant BNBM is a Chinese public limited company doing business in the State of Florida. BNBM owns a substantial stake in Taishan. BNBM is involved in the manufacturing and sale of gypsum drywall, and is one of the largest manufacturers of gypsum drywall in China. BNBM manufactures gypsum drywall under the brand name "Dragon." Upon information and belief, BNBM manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Florida. BNBM has continuously and systematically distributed and sold drywall to numerous purchasers in the State of Florida and BNBM's drywall is installed in numerous homes in Florida. As discussed more fully below, and upon information and belief, BNBM manufactured and sold to certain suppliers in the State of Florida, defective gypsum drywall that was installed in homes being built by Lennar, thereby causing substantial damage to Lennar in Florida. Moreover, BNBM purposefully availed itself of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Florida.

11.    Defendant Chenxiang is a Chinese public limited company doing business in the State of Florida. Chenxiang is involved in the manufacturing and sale of gypsum drywall. Chenxiang manufactures gypsum drywall under the brand name "C&K." Upon information and belief, Chenxiang manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by

6

thousands of consumers, if not more, within the State of Florida.  Chenxiang has continuously and systematically distributed and sold drywall to numerous purchasers in the State of Florida and Chenxiang's drywall is installed in numerous homes in Florida.  As discussed more fully below, and upon information and belief, Chenxiang manufactured and sold to certain suppliers in the State of Florida, defective gypsum drywall that was installed in homes being built by Lennar, thereby causing substantial damage to Lennar in Florida.  Moreover, Chenxiang purposefully availed itself of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Florida.

12.    This Court has personal jurisdiction over Defendants Knauf Gips, Knauf Tianjin, Taishan, BNBM, and Chenxiang under Florida Statutes § 48.193(2) because they are "engaged in substantial and not isolated activity within this state."   See Fla. Stat.  § 48.193(2). Additionally, Lennar's causes of action arise from Knauf Gips, Knauf Tianjin, Taishan, BNBM, and Chenxiang personally or through their agents, causing injury to property within the State of Florida arising out of acts or omissions of Knauf Gips, Knauf Tianjin, Taishan, BNBM, and Chenxiang outside the State of Florida, and at the time of the injury, products, materials, or things manufactured by Knauf Gips, Knauf Tianjin, Taishan, BNBM, and Chenxiang were used and consumed within the State of Florida in the ordinary course of commerce, trade, or use. See Fla. Stat. § 48.193(1)(f)(2).

13.    Defendant USG is a Delaware corporation authorized to do and doing business in the State of Florida.  USG, together with its various affiliates, including Seacoast, is the nation's largest distributor of drywall and related building products.

14.    Defendant Seacoast is a Delaware corporation authorized to do and doing business in the State of Florida.  Seacoast has numerous supply centers in the State of Florida,

including in Miami-Dade County, Florida.  Seacoast is a subsidiary of USG.

15.    Defendant Banner is a Florida corporation, having its principal place of business in Miami-Dade County, Florida.

16.    Defendant Black Bear is a Florida corporation, having its principal place of business in Largo, Florida.

17.    Defendant All Florida is a Florida corporation, having its principal place of business in Tampa, Florida.

18.    Defendant Rosen is a foreign corporation with its principal place of business in Denver, Colorado.  Rosen has numerous stores in the State of Florida, including in Miami-Dade County, Florida.

19.    Defendant La Suprema Trading is a Florida corporation, having its principal place of business in Miami-Dade County, Florida.

20.    Defendant La Suprema Enterprise is a Florida corporation, having its principal place of business in Miami-Dade County, Florida.

21.    Defendant Rothchilt is a foreign corporation doing business in the State of Florida.  Rothchilt exports products, including gypsum drywall, to customers in the United States, including the State of Florida.  Upon information and belief, Rothchilt sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Florida.  Rothchilt has continuously and systematically distributed and sold drywall to numerous purchasers in the State of Florida and the drywall supplied by Rothchilt is installed in numerous homes in Florida.  As discussed more fully below, and upon information and belief, Rothchilt supplied defective gypsum drywall that was installed in homes being built by Lennar in the State

8

of Florida, thereby causing substantial damage to Lennar in Florida.  Moreover, Rothchilt purposefully availed itself of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Florida.

22.     This Court has personal jurisdiction over Rothchilt under Florida Statutes § 48.193(2) because it is "engaged in substantial and not isolated activity within this state." *See* Fla. Stat. § 48.193(2). Additionally, Lennar's causes of action arise from Rothchilt personally or through its agents, causing injury to property within the State of Florida arising out of acts or omissions of Rothchilt outside the State of Florida, and at the time of the injury, products, materials, or things processed by Rothchilt were used and consumed within the State of Florida in the ordinary course of commerce, trade, or use. *See* Fla. Stat. § 48.193(1)(f)(2).

23.     Defendant IBSA is a member owned buying organization with its principal place of business in Smithfield, North Carolina, and is authorized to do and doing business in the State of Florida.

24.     Defendant Pfannkuch, at all material times hereto, was a Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place of business in Englewood, Florida.

25.     Defendant BMD is a Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place of business in North Port, Florida.

26.     Defendant Residential Drywall is a Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place of business in Tampa, Florida.

27.     Defendant J.D.M., at all material times hereto, was a Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place

of business in Lee County, Florida.

28.     Defendant McCoy is a Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place of business in Sarasota, Florida.

29.     Defendant Northeast is a Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place of business in Lutz, Florida.

30.     Defendant Florida Style is a Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place of business in Lee County, Florida.

31.     Defendant Ocean is a Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place of business in Lee County, Florida.

32.     Defendant B&B Stucco is a Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place of business in Lee County, Florida.

33.     Defendant Harrell's Drywall is a Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place of business in Lee County, Florida.

34.     Defendant S.D.A. is a Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place of business in Broward County, Florida.

35.     Defendant All County Drywall is a Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place of business in Plant City, Florida.

10

CASE NO. 09-07901 CA 23

36. Defendant Alpha & Omega is a Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place of business in Boca Raton, Florida.

37. Defendant Active Drywall is a Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place of business in Miami, Florida.

38. Defendant 1st Drywall is a Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place of business in Orlando, Florida.

39. Defendant Design Drywall is a Florida limited liability company conducting business as a construction contractor in the State of Florida, having its principal place of business in Miami, Florida.

40. Defendant ABC Drywall is Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place of business in Margate, Florida.

41. Venue in this action is proper because, among other things, at least one of the Defendants resides in Miami-Dade County, Florida, and at least one of the causes of action accrued in Miami-Dade County, Florida.

42. Lennar has retained the law firm of Greenberg Traurig, P.A. to represent it in this action, and has agreed to pay the firm its reasonable attorneys' fees and costs. Lennar has incurred fees and costs in bringing this action.

43. All conditions precedent to bringing this action have been waived, excused, performed, or have otherwise occurred.

11

### General Allegations

44.    In connection with the construction of homes in the State of Florida, Lennar entered into separate subcontract agreements with Defendants Pfannkuch, BMD, Residential, J.D.M., McCoy, Northeast, Florida Style, Ocean, B&B Stucco, Harrell's Drywall, S.D.A., All County Drywall, Alpha & Omega, Active Drywall, 1st Drywall, Design Drywall, and ABC Drywall (collectively, the "Installers") for the installation of gypsum drywall in certain of the homes.

45.    In performing the subcontract agreements, the Installers purchased gypsum drywall, either directly or indirectly, from various suppliers, including, but without limitation, Defendants USG, Seacoast, Banner, La Suprema Trading, La Suprema Enterprise, Black Bear, IBSA, Rothchilt, All Florida, and/or Rosen (collectively, the "Suppliers").

46.    Upon information and belief, the Suppliers purchased, directly and/or indirectly, gypsum drywall that was manufactured in China by Defendants Knauf Gips, Knauf Tianjin, Taishan, BNBM, Chenxiang, and possibly other unknown Chinese manufacturers (collectively, the "Manufacturers").

47.    Because of Lennar's commitment to delivering quality, value and service, Lennar monitors every repair request in all of its homes. In so doing, Lennar noticed an unusual number of HVAC system problems in the homes in certain of its communities in the State of Florida. As a result, Lennar began an extensive investigation into the source of the problem.

48.    As part of its investigation into the problem, and in an effort to address any questions and concerns its homeowners may have, Lennar retained expert consultants from ENVIRON International Corporation ("ENVIRON") – an international consulting firm with substantial experience in a multitude of complex environmental and human health issues – to,

12

among other things, conduct necessary scientific testing and analysis to determine the cause of

the HVAC issues affecting Lennar's homeowners.

49.    Through this extensive investigation, Lennar and its expert consultants discovered

that certain gypsum drywall installed in a small percentage of Lennar's homes in the State of

Florida (the "Affected Homes") is latently defective.[1]

50.    The defective drywall in the Affected Homes was provided and installed by the

Installers, who, in turn, had purchased the defective drywall from the Suppliers.   Upon

information and belief, the Suppliers received the defective drywall directly or indirectly from

the Manufacturers, who manufactured the defective drywall in China.

51.    Through scientific testing and analysis, Lennar's expert consultants determined

that the unreasonably defective drywall, because of its defective nature, appears to be interacting

with other conditions and elements, causing damage to other property within the Affected

Homes, including, but not limited to, HVAC coils, certain electrical and plumbing components,

and other affected materials and items (the "Other Property"). This corrosion and damage is

observable as a black surface accumulation on the Other Property.

52.    Lennar's expert consultants further determined through, among other ways,

electron microscopy, that the corrosion of HVAC coils in the Affected Homes was occurring to

the point that the copper surface of the HVAC coil had pitted deeply enough to cause holes in the

coil, which in turn caused the coils to fail. This breakthrough explained the unusual number of

HVAC system problems Lennar had experienced.

53.    Moreover, by recreating the conditions in the Affected Homes in a test chamber,

Lennar's expert consultants confirmed that the defective drywall had in fact damaged the Other

---

[1] In order to protect the privacy of Lennar's homeowners, the addresses of the Affected Homes are not disclosed herein. Undersigned counsel will, however, upon request, immediately provide any of the named Defendants with a list of the presently identified Affected Homes.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

Property. Specifically, Lennar's expert consultants placed samples of the defective drywall in a sealed container with segments of a clean copper plumbing pipe. After just four weeks in the test chamber, the copper plumbing pipe had the same observable black surface accumulation as the Other Property in the Affected Homes. After several additional weeks, Lennar's expert consultants analyzed the surface of the copper plumbing pipe with an electron microscope and confirmed that the surface of the pipe corroded and pitted in the same manner as the Other Property in the Affected Homes.

54. In addition to definitively identifying the sources of the problems in the Affected Homes, Lennar's expert consultants have, to date, conducted air sampling in over 100 Lennar homes. In each instance, Lennar's expert consultants at ENVIRON have confirmed that there is no indication that the conditions in the homes would result in any adverse human health effects.

55. Thereafter, ENVIRON provided written assurances to all of the affected homeowners that the conditions identified in their homes would not result in any adverse human health effects. ENVIRON has also personally addressed Lennar's affected homeowners' questions or concerns, and provided affected homeowners with the actual air sampling results from their homes, which were processed and prepared by an accredited independent laboratory.

56. In addition to addressing Lennar's affected homeowners' questions and concerns, ENVIRON briefed various county, state, and federal agencies, including the Florida Department of Health and the U.S. E.P.A. During this briefing, ENVIRON provided the agency participants with a detailed presentation summarizing ENVIRON's results, findings, and conclusions to date.

57. Thereafter, ENVIRON provided these agencies with a written memorandum summarizing ENVIRON's findings and conclusion that there is no indication that the conditions

14

identified in the Affected Homes would result in any adverse health outcomes. ENVIRON also provided the agency officials with all air sampling results performed as of that date.

58.    To this day, ENVIRON continues to work with and brief, among others, the Florida Department of Health. At Lennar's request, ENVIRON also continues to inspect and perform air sampling in Affected Homes.

59.    Lennar has also undertaken an intensive effort to notify and engage all responsible parties, demanding that they not only assist Lennar in finding alternative solutions to remedy the problem, but also to commit to doing precisely what Lennar has committed to doing for its homeowners -- to stand behind its product.

60.    Just by way of example, for many months, Lennar has been in regular communication with some of the primary sources of this defective drywall, Knauf Gips and/or Knauf Tianjin, which have themselves engaged experts and consultants in the State of Florida to investigate Lennar's claims regarding the defective drywall. Among other things, Knauf Gips and/or Knauf Tianjin have inspected several of the Affected Homes, and have witnessed firsthand the effects of their defective drywall on, among other things, the Affected Homes' HVAC coils, electrical wiring, and plumbing. Lennar has also allowed Knauf Gips and/or Knauf Tianjin to test alternative solutions in one of Lennar's model homes in Florida (which, too, has been affected by the defective drywall). Despite all of this, and Lennar's repeated requests for Knauf Gips and/or Knauf Tianjin to provide a firm commitment that they will stand behind their product, Knauf Gips and/or Knauf Tianjin have thus far been steadfast in their refusal to take responsibility for their defective product and agree to fully repair or replace the defective drywall and Other Property.

15

61.    All named defendants with whom Lennar has communicated have similarly refused to take responsibility.  Lennar, on the other hand, has accepted responsibility and stands behind its homes and its homeowners.

62.    At the same time, Lennar stands alongside its homeowners as a victim of the Manufacturers, Suppliers, and Installers, who unfortunately allowed this defective drywall to be manufactured, supplied and installed in the Affected Homes.  Lennar remains committed to fully rectify these problems and otherwise address its homeowners' concerns and the real harm that this defective drywall has caused them.  Indeed, Lennar has already begun the expensive and time-consuming process of repairing the Affected Homes.  While at the same time investigating potentially less disruptive solutions for its homeowners, Lennar has already started to temporarily relocate some of its homeowners so that it can remove and replace all of the defective gypsum drywall and repair or replace the Other Property and other materials and items damaged as a result of the defective drywall.  In order to repair or replace the Other Property, Lennar has also been forced to remove other buildings materials from the Affected Homes, including certain defective and non-defective gypsum drywall.

63.    Lennar has received, and continues to receive, assignments from certain of its homeowners of a portion of their rights, interest, and claims for property damage arising from the defective gypsum drywall in the Affected Homes against the responsible parties, including the Manufacturers, Suppliers, and Installers.

64.    While many of its homeowners have praised Lennar's proactive response and commitment, the defective drywall has caused substantial damage to Lennar's goodwill and business reputation.

CASE NO. 09-07901 CA 23

### COUNT I
### (Against Knauf Gips for Vicarious Liability)

65.    Lennar reasserts and realleges the allegations in paragraphs 1 through 64 above as if fully set forth herein.

66.    This is an action for vicarious liability against Knauf Gips for the negligent and wrongful acts of its actual and/or apparent agent, Knauf Tianjin.

67.    Knauf Gips was responsible for introducing its advanced production technology into China, and for establishing Knauf Tianjin in China. Knauf Gips exercises strict control over Knauf Tianjin's operations, and is responsible for implementing and supervising the quality control measures used by Knauf Tianjin. Indeed, the product quality of all Knauf Gips' plants in China, including Knauf Tianjin, is strictly controlled according to the requirements of Knauf Gips' headquarters in Germany.

68.    By establishing Knauf Tianjin in China, and by exercising strict control over Knauf Tianjin's conduct and operations, Knauf Gips acknowledged that Knauf Tianjin would act on its behalf as its actual and/or apparent agent.

69.    Knauf Tianjin accepted the undertaking to act on Knauf Gips' behalf.

70.    Upon information and belief, Knauf Gips supervises, monitors, and controls Knauf Tianjin's daily conduct and operations, including the manufacturing, distribution, marketing, and sale of Knauf Tianjin's drywall products. Moreover, upon information and belief, Knauf Gips is responsible for establishing, implementing, supervising, and maintaining the quality control mechanisms utilized by Knauf Tianjin.

71.    As such, Knauf Gips is vicariously liable for all of the damages caused by the negligent and wrongful conduct of its actual and/or apparent agent, Knauf Tianjin. As a result of Knauf Gips' and/or Knauf Tianjin's wrongful conduct, Lennar has been damaged. These

17

damages include, but are not limited to, the cost to fully repair the Affected Homes, which may include replacing the defective gypsum drywall and repairing and replacing the damaged Other Property in the Affected Homes. These damages also include all costs incurred by Lennar in relocating its homeowners to suitable temporary housing facilities while the Affected Homes are undergoing such repairs, as well as damages for loss of goodwill and reputation.

WHEREFORE, Lennar demands judgment for damages against Knauf Gips in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT II
### (Against Knauf Gips and Knauf Tianjin for Common Law Indemnity)

72.     Lennar reasserts and realleges the allegations in paragraphs 1 through 64 above as if fully set forth herein.

73.     This is an action for common law indemnity against Knauf Gips and Knauf Tianjin.

74.     Knauf Gips and/or Knauf Tianjin manufactured the defective gypsum drywall that was installed in certain of the Affected Homes.

75.     The deficient and defective gypsum drywall manufactured by Knauf Gips and/or Knauf Tianjin has caused damage to Other Property within the Affected Homes.

76.     Because of the defective drywall installed in the Affected Homes, Lennar has been forced to undertake an expensive and time consuming process to thoroughly and completely repair the Affected Homes, which may include replacing the defective gypsum drywall and repairing or replacing the Other Property and other materials damaged as a result of the defective drywall.

18

77.   Lennar has incurred and will continue to incur monetary damages from the repair and replacement of defective drywall and Other Property in the Affected Homes.

78.   Lennar is entirely without fault for the damage to the Affected Homes and Other Property.

79.   As the manufacturers of the defective gypsum drywall, Knauf Gips and/or Knauf Tianjin are wholly at fault and responsible for all damages resulting from the defective gypsum drywall.

80.   As a result of Knauf Gips' and/or Knauf Tianjin's wrongful conduct, Lennar has been damaged. These damages include, but are not limited to, the cost to fully repair the Affected Homes, which may include replacing the defective gypsum drywall and repairing and replacing the damaged Other Property in the Affected Homes. These damages also include all costs incurred by Lennar in relocating its homeowners to suitable temporary housing facilities while the Affected Homes are undergoing such repairs, as well as damages for loss of goodwill and reputation.

81.   Because Lennar, through no fault of its own, is vicariously, constructively, derivatively, or technically responsible -- and, unlike Knauf Gips and/or Knauf Tianjin, has already taken responsibility -- for the defective gypsum drywall manufactured by Knauf Gips and/or Knauf Tianjin and installed in the Affected Homes, a special relationship exists between Lennar and Knauf Gips and/or Knauf Tianjin pursuant to which Lennar has the right to be indemnified for all damages sustained as a result of Knauf Gips' and/or Knauf Tianjin's defective gypsum drywall, including all attorneys' fees and costs incurred in connection with this lawsuit.

WHEREFORE, Lennar demands judgment for damages against Knauf Gips and/or

19

CASE NO. 09-07901 CA 23

Knauf Tianjin in an amount to be determined at trial, plus attorneys' fees, costs, and interest, and for such further and other relief as the Court deems just and proper.

## COUNT III
### (Against Knauf Gips and Knauf Tianjin for Products Liability)

82.     Lennar reasserts and realleges the allegations in paragraphs 1 through 64 above as if fully set forth herein.

83.     This is an action for products liability against Knauf Gips and Knauf Tianjin.

84.     Knauf Gips and/or Knauf Tianjin manufactured the defective gypsum drywall that was installed in certain of the Affected Homes.

85.     The defective gypsum drywall manufactured by Knauf Gips and/or Knauf Tianjin is unreasonably defective because it has caused damages to Other Property in the Affected Homes.

86.     Knauf Gips and/or Knauf Tianjin expected the defective gypsum drywall to reach the Affected Homes without substantial change affecting its condition, and the defective gypsum drywall did in fact reach the Affected Homes without substantial change affecting that condition.

87.     The defective gypsum drywall manufactured by Knauf Gips and/or Knauf Tianjin directly and proximately caused damage to the Other Property in the Affected Homes including, but not limited to, copper HVAC coils, certain electrical and plumbing components, and other affected materials and items.

88.     As a result, Lennar has been damaged. These damages include, but are not limited to, the cost to repair or replace the damaged Other Property in the Affected Homes.

WHEREFORE, Lennar demands judgment for damages against Knauf Gips and/or Knauf Tianjin in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

20

## COUNT IV
### (Against Knauf Gips and Knauf Tianjin for Negligence)

89. Lennar reasserts and realleges the allegations in paragraphs 1 through 64 above as if fully set forth herein.

90. This is an action for negligence against Knauf Gips and Knauf Tianjin.

91. Knauf Gips and/or Knauf Tianjin manufactured the defective gypsum drywall that was installed in certain of the Affected Homes.

92. Lennar was a foreseeable user of the gypsum drywall being manufactured, distributed and sold by Knauf Gips and/or Knauf Tianjin. As such, Knauf Gips and/or Knauf Tianjin owed a duty to Lennar to exercise reasonable care in the manufacturing, distribution and sale of gypsum drywall and to ensure that the gypsum drywall was free of defects.

93. Knauf Gips and/or Knauf Tianjin breached this duty by negligently manufacturing, distributing and selling gypsum drywall that was defective, and failing to warn its customers that the drywall was defective. Moreover, Knauf Gips and/or Knauf Tianjin failed to implement proper quality control mechanisms for detecting defects in the gypsum drywall they were manufacturing, distributing and selling.

94. The defective gypsum drywall negligently manufactured by Knauf Gips and/or Knauf Tianjin directly and proximately caused damage to the Other Property in the Affected Homes including, but not limited to, copper HVAC coils, certain electrical and plumbing components, and other affected materials and items.

95. As a result, Lennar has been damaged. These damages include, but are not limited to, the cost to repair or replace the damaged Other Property in the Affected Homes.

WHEREFORE, Lennar demands judgment for damages against Knauf Gips and/or Knauf Tianjin in an amount to be determined at trial, plus costs and interest, and for such further

21

and other relief as the Court deems just and proper.

## COUNT V
### (Against Knauf Gips and Knauf Tianjin for Equitable Subrogation)

96.    Lennar reasserts and realleges the allegations in paragraphs 1 through 64 above as if fully set forth herein.

97.    This is an action for equitable subrogation against Knauf Gips and Knauf Tianjin.

98.    Knauf Gips and/or Knauf Tianjin manufactured the defective gypsum drywall that was installed in certain of the Affected Homes.

99.    Lennar has satisfied, and continues to satisfies, the obligations and debts of Knauf Gips and/or Knauf Tianjin by temporarily relocating the homeowners of the Affected Homes, removing and replacing all of the defective gypsum drywall in the Affected Homes, and repairing or replacing the damaged Other Property and other materials and items in the Affected Homes.

100.    Lennar did not act as a volunteer in making these payments. Rather, Lennar made these payments because it was necessary to protect Lennar's own interests and because Lennar and its homeowners might otherwise have suffered additional loss if these obligations were not discharged.

101.    Lennar is not primarily liable for these payments. Rather, Knauf Gips and/or Knauf Tianjin, as the manufacturers of the defective gypsum drywall, are liable for the costs associated with repairing or replacing the defective gypsum drywall and Other Property in the Affected Homes and, in equity and good conscience, should have made these payments.

102.    By repairing or replacing the defective drywall and Other Property in the Affected Homes, Lennar has satisfied the entire obligation and debt associated with this repair work and has effectively obtained a release for Knauf Gips and Knauf Tianjin from the homeowners of the

22

Affected Homes for any and all claims relating to this repair work. Along these lines, the homeowners have agreed not to sue Knauf Gips and Knauf Tianjin directly, but rather, have assigned such rights to Lennar.

103. Subrogation of these claims will not work any injustice to the rights of Knauf Gips, Knauf Tianjin, the Installers, the Suppliers, other Manufacturers, or any other third party.

104. Knauf Gips and Knauf Tianjin will be unjustly enriched should subrogation be denied.

**WHEREFORE,** Lennar demands judgment for damages against Knauf Gips and/or Knauf Tianjin in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT VI
### (Against Taishan for Common Law Indemnity)

105. Lennar reasserts and realleges the allegations in paragraphs 1 through 64 above as if fully set forth herein.

106. This is an action for common law indemnity against Taishan.

107. Upon information and belief, Taishan manufactured the defective gypsum drywall that was installed in certain of the Affected Homes.

108. The deficient and defective gypsum drywall manufactured by Taishan has caused damage to Other Property within the Affected Homes.

109. Because of the defective drywall installed in the Affected Homes, Lennar has been forced to undertake an expensive and time consuming process to thoroughly and completely repair the Affected Homes, which may include replacing the defective gypsum drywall and repairing or replacing the Other Property and other materials damaged as a result of the defective drywall.

23

CASE NO. 09-07901 CA 23

110.   Lennar has incurred and will continue to incur monetary damages from the repair and replacement of defective drywall and Other Property in the Affected Homes.

111.   Lennar is entirely without fault for the damage to the Affected Homes and Other Property.

112.   As the manufacturer of the defective gypsum drywall, Taishan is wholly at fault and responsible for all damages resulting from the defective gypsum drywall.

113.   As a result of Taishan's wrongful conduct, Lennar has been damaged.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which may include replacing the defective gypsum drywall and repairing and replacing the damaged Other Property in the Affected Homes.  These damages also include all costs incurred by Lennar in relocating its homeowners to suitable temporary housing facilities while the Affected Homes are undergoing such repairs, as well as damages for loss of goodwill and reputation.

114.   Because Lennar, through no fault of its own, is vicariously, constructively, derivatively, or technically responsible – and indeed has already taken responsibility – for the defective gypsum drywall manufactured by Taishan and installed in the Affected Homes, a special relationship exists between Lennar and Taishan pursuant to which Lennar has the right to be indemnified for all damages sustained as a result of Taishan's defective gypsum drywall, including all attorneys' fees and costs incurred in connection with this lawsuit.

WHEREFORE, Lennar demands judgment for damages against Taishan in an amount to be determined at trial, plus attorneys' fees, costs, and interest, and for such further and other relief as the Court deems just and proper.

24

## COUNT VII
### (Against Taishan for Products Liability)

115.    Lennar reasserts and realleges the allegations in paragraphs 1 through 64 above as if fully set forth herein.

116.    This is an action for products liability against Taishan.

117.    Upon information and belief, Taishan manufactured the defective gypsum drywall that was installed in certain of the Affected Homes.

118.    The defective gypsum drywall manufactured by Taishan is unreasonably defective because it has caused damage to Other Property in the Affected Homes.

119.    Taishan expected the defective gypsum drywall to reach the Affected Homes without substantial change affecting its condition, and the defective gypsum drywall did in fact reach the Affected Homes without substantial change affecting that condition.

120.    The defective gypsum drywall manufactured by Taishan directly and proximately caused damage to the Other Property in the Affected Homes including, but not limited to, copper HVAC coils, certain electrical and plumbing components, and other affected materials and items.

121.    As a result, Lennar has been damaged. These damages include, but are not limited to, the cost to repair or replace the damaged Other Property in the Affected Homes.

WHEREFORE, Lennar demands judgment for damages against Taishan in an amount to be determined at trial, plus costs and interest, and for such further and other relief as the Court deems just and proper.

## COUNT VIII
### (Against Taishan for Negligence)

122.    Lennar reasserts and realleges the allegations in paragraphs 1 through 64 above as if fully set forth herein.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com